W. T. Eisensmith *et al. v.* Buhl Optical Company *et al.*

(No. 7982)

Submitted November 21, 1934.   Decided December 22, 1934.

*Blue, Dayton & Campbell* and *Melville Stewart,* for appellants.

*Lee, Blessing & Steed,* for appellees.

Litz, Judge:

This suit involves the right of a corporation to practice optometry, in West Virginia, through a registered and licensed optometrist.

W. T. Eisensmith and A. Levit, duly registered and licensed optometrists in this state, suing on behalf of themselves and all others similarly situated, obtained an injunction against defendants, Buhl Optical Company, a corporation, and O. J. Morrison Department Store Company, a corporation, inhibiting and restraining each of them from practicing optometry through registered and licensed optometrist employees.   Defendants have appealed.

The Buhl Optical Company and affiliated corporations

practice optometry, in this and other states, through registered and licensed optometrist employees, in connection with the trade or occupation of optician. The optical company conducts such a business in the department store of the O. J. Morrison Company, Charleston, West Virginia. The optometrist in charge (who is subject to dismissal at the request of the O. J. Morrison Company) is paid by the optical company a weekly salary in addition to a small commission on excess receipts and agrees with the optical company that he will not practice optometry in Charleston or the trade area thereof, as determined by the local chamber of commerce, within three years from the termination of his employment with the corporation. The O. J. Morrison Company receives 21¼% of the gross receipts of the business, the optical company the remainder. There is exhibited with the bill an authenticated copy of the record in a suit pending in the circuit court of Kanawha County wherein the optical company seeks to prohibit Robert L. Burroughs, a former optometrist employee of the corporation, from violating his agreement with it not to practice optometry in Charleston or the trade area thereof.

Defendants, appealing from the decree of the circuit court, contend substantially (1) that the practice of optometry is not one of the so-called learned professions and that a corporation may, therefore, in the absence of 'statutory inhibition, practice the calling through regularly registered and licensed optometrists; and (2) that article 8, chapter 30, Code 1931, regulating the practice of optometry, does not prohibit a corporation from practicing optometry. The denial by plaintiffs of the second proposition furnishes the real issue of the case. The practice of optometry is defined by section 2 of the statute as follows: "Any one or any combination of the following practices shall constitute the practice of optometry:

(a) The examination of the human eye, without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms, or occular exercises;

(b)   The employment of objective or subjective mechanical means to determine the accommodative or refractive states of the human eye or the range or power of vision of the human eye;

(c)   The prescription or adoption without the use of drugs, medicines or surgery, of lenses, prisms, or occular exercises to correct defects or abnormal conditions of the human eye or to adjust the human eye to the conditions of special occupation;

(d)   The replacement or duplication of an opthalmic lens without a prescription from a person authorized under the laws of this State to practice either optometry or medicine and surgery.   The provisions of this subdivision shall not be construed so as to prevent an optical mechanic from doing the merely mechanical work in such a case.   An opthalmic lens within the meaning of this article shall be any lens which has a spherical, cylindrical or prismatic power or value, and is ground pursuant to a prescription."

Section 4 of the act provides:   "No person shall practice or offer to practice optometry in this State without first applying for and obtaining a certificate of registration for such purpose from the West Virginia Board of Optometry; but the following persons, firms and corporations are exempt from the operation of this article, except as hereinafter provided:

(a)   Persons who have heretofore been registered as optometrists in this State, or who were engaged in the practice of optometry in this State before the passage of any law by this State regulating such practice, and who have heretofore received from the board of examiners certificates of exemption from examination;

(b)   Persons authorized under the laws of this State to practice medicine and surgery;

(c)   Persons, firms and corporations who sell eye glasses or spectacles in a store, shop or other permanently established place of business on prescription from persons authorized under the laws of this State to practice either optometry or medicine and surgery;

(d)   Persons, firms and corporations who manufac-

ture or deal in eye glasses or spectacles in a store, shop or other permanently established place of business, and who neither practice nor attempt to practice optometry." Defendants rely upon paragraph (c) as exempting them from the operation of the statute. Assuming that paragraph (c), standing alone, prima facie authorizes a corporation to sell eye glasses and spectacles on prescriptions from persons, in its employ, entitled to practice optometry or medicine and surgery, its final interpretation involves a consideration of the entire act. Paragraph (d) immediately following, in our opinion, clearly shows that such tentative construction of paragraph (c) was not intended by the legislature. The selling of eye glasses or spectacles under paragraph (c) is included in the business of manufacturing and dealing in eye glasses or spectacles under paragraph (d). It cannot, therefore, be assumed that the legislature intended in paragraph (c), without so stating, to authorize a corporation, selling eye glasses or spectacles, to practice optometry, while expressly excluding the privilege in paragraph (d). · Courts will not, without some basis, attribute to the legislature an absurd, unreasonable and inconsistent intention; and as contradictions cannot stand together, a supposed intention of the legislature, inconsistent with its expressed intention, will not be implied.

The statute, recognizing optometry as a profession, provides that it shall be unlawful for any person to practice optometry in this state who has not been licensed and registered as required by the act; that an applicant for registration shall present satisfactory evidence that he is at least twenty-one years of age, of good moral character and temperate habits, and has graduated from a high school or secondary school, or has completed an equivalent course of study approved by the Board of Optometry, created by the act, and has graduated from a school or college of optometry approved by the board of the minimum course of study of two thousand hours distributed over two school years of eight months each; that the examination of the applicant by the board shall cover anatomy of the eyes, use of the opthalmascope, re-

tinascope, opthalmometer, trial lenses, the general laws of optics and refraction, and such other subjects as the board may deem proper.

One licensed to practice optometry is forbidden to advertise, practice, or attempt to practice, "under a name other than" his own. This provision of the statute is certainly antagonistic to the view that a corporation may practice optometry through a licensed optometrist.

It is unlawful, under the statute, to permit any person in one's employ, supervision or control, not licensed as such, to practice optometry. This provision is emphasized by defendants as indicating that any unlicensed person, firm or corporation may practice optometry by employing a licensed optometrist. The regulation was evidently directed against the practice of licensed optometrists employing students of optometry. The implication suggested cannot arise in the face of the express provision forbidding a registered optometrist from "advertising, practicing, or attempting to practice, under a name other than" his own. One of the evident purposes of the statute was to prevent the commercialization of the profession. *Madeleine B. Stern* v. *Edward J. Flynn, as Secretary of New York;* recently decided by the Supreme Court at Albany, involved a New York statute, similar to ours, regulating the practice of optometry. In holding that a corporation could not engage in the profession, the court said: "The practice of optometry may be carried on only by those persons who have complied with the statute and have met the required qualifications as to moral character and educational fitness. It necessarily follows that the right to practice optometry is a personal one and confined to real persons and not to legal entities. A corporation as such cannot meet the requirements of the statute; it cannot have completed a course in a high school or in a university where optometry is taught, nor present the necessary certificate of character. It cannot pass a state board examination or present a degree earned in a university."

There can be no doubt of the constitutionality of the statute. In *Commonwealth* v. *Houtenbrink,* 235 Mass.

320, 126 N. E. 669, the Supreme Court of Massachusetts, in sustaining the constitutionality of a legislative enactment regulating the practice of optometry, said that the kind of work undertaken by the optometrist "bears such intimate relations to the health of mankind as to bring it within the power of legislative supervision through the exercise of the police power. Vision is essential to the highest usefulness of the individual. The eye is proverbially a delicate organ. It is closely connected with intellectual, nervous and physical functions. Advice as to its care and prescribing for the correction of its defects by tests and examinations without the use of drugs is closely connected with health."

The decree of the circuit court is, therefore, affirmed.

*Affirmed.*

MAXWELL, JUDGE, concurring:

The underlying purpose of the statute is to protect the public by precluding from the practice of optometry persons who are not qualified to discharge the duties involved.

Section 4 requires that practitioners shall obtain certificates of registration from the state board of optometry. Then follow four classes of exempted persons under subheadings (a), (b), (c) and (d).

. Subsection (a) exempts persons who have heretofore been registered as optometrists in this state, or who were engaged in the practice of optometry in this state before the passage of any statute regulating such practice. Subsection (b) exempts from the necessity of procuring a certificate of registration persons authorized under the laws of this state to practice medicine or surgery. These two exemptions are entirely clear. For convenience, sections (c) and (d) are here set forth, though they are quoted in the opinion.

"(c) Persons, firms and corporations who sell eye glasses or spectacles in a store, shop or

other permanently established place of business on prescriptions from persons authorized under the laws of this State to practice either optometry or medicine and surgery.

"(d) Persons, firms and corporations who manufacture or deal in eye glasses or spectacles in a store, shop or other permanently established place of business, and who neither practice nor attempt to practice optometry."

Under (c) persons who sell eye glasses on authorized prescriptions need not qualify as optometrists.

Under (d) persons who manufacture eyeglasses not on prescription, and who do not undertake to practice optometry, need not obtain certificates of registration as optometrists.

The phraseology of exceptions (c) and (d) is not clear. The use of the phrase "firms and corporations" in each of the said subsections is confusing, but I perceive nothing therein indicative of legislative intent to depart, by way of exception, from the basic object of the act to limit the practice of optometry to competent and approved individuals. The sum total of (c) and (d) is that the persons, firms and corporations therein enumerated shall not be required to obtain certificates, because they are not actually engaged in the practice of. optometry.

The act precludes all persons not properly registered from practicing optometry. A corporation is a *person,* and in the nature of things it can not possess the qualifications to practice optometry. A person, individual or corporate, may not do by indirection what he or it is precluded from doing directly.

All of our statutory provisions in respect of professions and occupations are grouped in Chapter 30 of the Code. In the articles regarding pharmacists, embalmers and engineers, special provision is made for the conducting of such occupations or professions by corporations employing persons licensed under the statute to perform the particular services involved. It would seem that if it had been the legislative intent to authorize corporations to practice optometry through the employment of

licensed optometrists, it would have followed the plan employed as to the three professions or occupations enumerated and have made a clear and specific provision therefor.

HATCHER, JUDGE, dissenting:

The defendant company may practice optometry, unless forbidden that right by the provisions of Code 1931, chapter 30, article 8.

Section 4 of that article contains a list of persons, firms and corporations which are *excepted from the provisions of the article.* The exceptions are lettered (a), (b), (c) and (d). Each exception describes a different person, firm or corporation. Each exception is complete in itself and contains no reference even to any other exception. The majority opinion assumes that exception (c), standing alone, would except a corporation conducting business as defendant does. Exception (d) is just as much an exception (pure and simple) as exception (c). But the majority opinion states that exception (d) *expressly prohibits* the right of a corporation to practice optometry. I cannot find any prohibition at all in exception (d), much less an express one. To my mind, (d) is nothing more than what the section classifies it, i. e. *another exception* to the article. Note the part of its language which is pertinent here "(d) * * * corporations who manufacture or deal in eye glasses or spectacles in a store * * * and who neither practice nor attempt to practice optometry." *That language does not purport to prohibit anything. It simply describes a type* of corporate business—different from that described in exception (c). The majority opinion cites other provisions of the article not directly applicable to corporations, as tending to negative the right of corporations to practice optometry. If the defendant is *specifically excepted* from the article by section 4(c), then, of course, those other indirect provisions have no application whatever to the defendant.

Since, in my opinion, the defendant is excepted from the provisions of article 8, it may lawfully practice optometry, and I respectfully dissent.