RAYMOND D. GAGE, ESQ. Town Attorney, Geneva (Town)
We acknowledge receipt of your letter asking for an opinion concerning residence and the right to hold public office. The facts, as you present them to us in your letter and in a subsequent telephone conversation, are as follows: a resident of the town who has served simultaneously for many years as elected tax collector and appointed building inspector (both public offices), built a large, six bedroom home in the town about ten years ago and he and his wife lived there with their two grandchildren. In January, 1977, a new resident who had moved to the town made an offer to buy the officer's house. The house had not been placed on the market but it was a good offer and, as the home was then only being occupied by the officer and his wife (the grandchildren having matured by then) the officer and his wife decided to sell. They found no satisfactory home to buy or rent temporarily in the town and consequently rented a second-floor apartment in an adjoining city but the officer promptly obtained options on two building lots in the town and has consulted builders about building a small home there. His use of the upstairs apartment where he is now living is necessarily temporary because of a heart condition which makes it unwise and dangerous for him to live on the second floor of a building.
Following the sale of the officer's home in January, 1977, he continued to serve in his two town offices. He is not running for reelection to the office of tax collector but wishes to continue in the appointive office of building inspector.
You inquire whether the building inspector is still a resident of the town and continues to hold the office of building inspector or whether because of his temporary occupancy of the apartment in the adjoining city his residence has been changed and the office of building inspector is vacant by operation of Public Officers Law § 30 subd. 1 par. d, which provides:
"§ 30. Creation of vacancies
 1. Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:
* * *
 d. His ceasing to be an inhabitant of the * * * municipal corporation of which he is required to be a resident when chosen; * * *."
The words "inhabitant" and "resident" as used in the New York Constitution Article II § 1, Public Officers Law §§ 3 subd. 1 and 30 subd. 1 par. d, Election Law § 150 and some other statutes have always been construed to mean "domicile." An excellent case discussing residence and domicile is Application of Woolley and Six Other Cases,
108 N.Y.S.2d 165 (1951). See also, Aliello v Power, 9 Misc.2d 523 affd,4 A.D.2d 833 affd, 3 N.Y.2d 892 (1957) and Matter of Newcomb, 192 N.Y. 238
(1908). A detailed discussion of residence and domicile and change thereof is contained in the Newcomb case, in which it is said:
 "As domicile and residence are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile.
 "The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges a change. The question is one of fact rather than law, and it frequently depends upon a variety of circumstances, which differ as widely as the peculiarities of individuals. Less evidence is required to establish a change of domicile from one state to another than from one nation to another. In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail. Mere change of residence although continued for a long time does not effect a change of domicile, while a change of residence even for a short time with the intention in good faith to change the domicile, has that effect. * * * There must be a present, definite and honest purpose to give up the old and take up the new place as the domicile of the person whose status is under consideration. The subject is under the absolute control of every person of full age and sound mind who is free from restraint, unless it may be that the domicile of a wife is controlled by that of her husband as long as she lives with him. (Story's Conflict of Law [7th ed.], § 46.) Subject to the qualifications named every human being may select and make his own domicile, but the selection must be followed by proper action. Motives are immaterial, except as they indicate intention. A change of domicile may be made through caprice, whim or fancy, for business, health or pleasure, to secure a change of climate, or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention. (McConnell v. Kelley, 138 Mass. 372.) No pretense or deception can be practiced, for the intention must be honest, the action genuine and the evidence to establish both, clear and convincing. The animus manendi must be actual with no animo revertendi. A temporary residence for a temporary purpose, with intent to return to the old home when that purpose has been accomplished, leaves the domicile unchanged.
* * *
 "This discussion shows what an important and essential bearing intention has upon domicile. It is always a distinct and material fact to be established. * * *." (Emphasis supplied.)
In all of the cases in which the question of domicile and residence are determined, it is stated that a factual determination can be made only by a court and that each case depends upon its own facts. In view of this consistent position of the courts, it would be inappropriate for this office to venture to make a finding of fact in relation to your inquiry, although from the recitation of facts which you have provided we can say that it is unlikely that a court would find the public officer to have changed his domicile.